## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERTA L. ROBERSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 17-150-LPS |
| | : | |
| CITY OF WILMINGTON, et al., | : | |
| | : | |
| Defendants. | : | |

Roberta L. Roberson, Wilmington, Delaware, Pro Se Plaintiff.

Loren Holland, Assistant City Solicitor, City Solicitor's Office, Wilmington, Delaware.  Counsel for Defendant City of Wilmington.

Lance M. Geren, Esquire, Freedman and Lorry, P.C., New Castle, Delaware.  Counsel for Defendants AFSCME Local 1102 and Delaware Public Employees Council 81.

## MEMORANDUM OPINION

September 24, 2018
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.     INTRODUCTION

Plaintiff Roberta L. Roberson ("Plaintiff"), who proceeds *pro se* and was granted *in forma pauperis* status, filed this action on February 10, 2017.  Plaintiff alleges wrongful termination of her employment, violations of several federal laws, and conspiracy.  The Court has jurisdiction by reason of a federal question pursuant to 28 U.S.C. § 1331.  Presently before the Court is Defendant City of Wilmington's ("the City") motion to dismiss or, in the alternative, motion for summary judgment, and Defendants' AFSCME Local 1102, and Delaware Public Employees Council 81 (together the "Union") motion to dismiss.  (D.I. 15, 25)  Plaintiff did not file oppositions to the motions despite being given additional time to do so.  (*See* D.I. 34)

## II.     BACKGROUND

Plaintiff alleges she was on the receiving end of a series of disciplinary actions in retaliation for using FMLA (*i.e.*, Family Medical Leave Act) and sick leave which resulted in her July 2016 wrongful discharge, "without "due process and just cause."  (D.I. 2 at 4)  Plaintiff was a member of AFSCME Local 1102, an affiliate of the Delaware Public Employees Council 81.  She alleges that the Union filed a grievance on her behalf challenging the City's decision to terminate her employment, and then the Union breached its duty of fair representation by failing to move the grievance to Step IV of the grievance procedure or to arbitration.

Plaintiff sought, and received, unemployment benefits in August 2016.  (*Id.* at 5)  The benefits stopped as of September 13, 2016, following the City's appeal of the award of benefits.  (*Id.*)  A hearing was held on November 19, 2016 before the Delaware Unemployment Insurance Appeal Board ("the Board"), and Plaintiff subpoenaed a union president to testify on her behalf.[1]  (*Id.*)

---

[1] The Court granted the Board's motion to dismiss on March 26, 2018.  (D.I. 33, 34)

Plaintiff alleges the union president "contradicted the grievance claim" she filed against City management, and the union president "represented the City's interest instead of [hers.]" *(Id.)*

Plaintiff alleges that the Union and the City have not "responded to [her] with a decision as to [her] grievance progressing to step 4 and arbitration; or [her] right to a hearing in Superior Court, which has compelled [her] to seek remedy from [this Court]." *(Id.)* Plaintiff alleges the City: (1) retaliated against her for her use of FMLA and sick leave by creating "contrived and arbitrary disciplinary actions;" (2) discharged her without due process; (3) discharged her without just cause; and (4) failed to provide her a decision on the grievance progressing to Step IV. *(Id.* at 4-5) Plaintiff alleges: (1) the Union breached its duty of fair representation with respect to pursuing her grievance, and (2) violated the National Labor Relations Act. Plaintiff seeks reinstatement of her unemployment benefits, reinstatement of her employment, lost wages and future earnings, and compensatory damages, which include damages for negligent and intentional infliction of emotional distress.

Plaintiff took leave under the FMLA from April 16, 2010 through May 20, 2010, and from March 4, 2016 through May 2, 2016. (D.I. 16 at Exs. 4, 5) Prior to taking the 2016 FMLA leave, Plaintiff was disciplined for her behavior on: (1) February 6, 2015, when she received a verbal warning for work performance *(see id.* at Ex. 6); (2) August 14, 2015, when she received a one-day suspension for being rude and disrespectful to a customer and insubordinate to a supervisor *(see id.* at Ex. 7); (3) December 1, 2015, when she received a three-day suspension for violating standard operating procedures *(see id.* at Ex. 8); and (4) January 8, 2016, when she received a five day suspension for being rude, disrespectful, and insubordinate to her supervisor on two separate occasions *(see id.* at Ex. 9). On July 25, 2016, Plaintiff was disciplined for being rude and disrespectful to a customer on the phone. *(See id.* at Ex. 10). Following the July 25, 2016 incident, Plaintiff was suspended pending a pre-termination hearing. *(See id.)*

On July 27, 2016, Plaintiff was notified that the pre-termination hearing, originally scheduled for August 1, 2016, had been rescheduled to August 3, 2016 upon her request. (*See id.* at Ex. 11) Plaintiff appeared and participated in the pre-termination hearing. (*See id.*) The pre-termination employment hearing decision, dated August 9, 2016, was mailed to Plaintiff, and it advised her of the decision to terminate her employment retroactive to the July 25, 2016 disciplinary action. (*See id.* at Ex. 11) The decision to terminate her employment was based upon the Director of Finance's review of the testimony provided by all the parties, the written documentation provided, and the culmination of a series of progressive disciplinary actions. (*See id.* at Ex. 11)

Plaintiff filed a grievance on August 15, 2016, following receipt of the pre-termination employment decision. (*See id.* at Ex. 12) Plaintiff commenced this action on February 10, 2017. (D.I. 2) Thereafter, Plaintiff attended and participated in the May 3, 2017 Step IV grievance hearing. (*See id.* at Ex. 13) Plaintiff was mailed a copy of the May 22, 2017 Step IV grievance decision, which concluded that the City had good and sufficient cause to terminate Plaintiff from employment because she repeatedly violated work rules regarding her interaction with customers, co-workers, and supervisors despite progressive discipline, training, and counsel. (*See id.*) The decision further concluded that there was substantial evidence to support Plaintiff's termination, there was no substantive violation or omission of procedure for the termination, the discipline imposed was not a result of political, religious, racial or other bias or prejudice, and the disciplinary action taken was not unreasonable, capricious, or arbitrary in light of the offense, the circumstances surrounding the offense, and the past record of Plaintiff. (*Id.*)

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an action for "lack of subject matter jurisdiction." A Rule 12(b)(1) motion may be treated as either a facial or

factual challenge to the Court's subject matter jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). When considering a facial attack, the Court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in the plaintiff's favor. *See In re Horizon Healthcare Services Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). When reviewing a factual attack, the Court may weigh and consider evidence outside the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

   **B.     Rule 12(b)(6)**

   Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

   A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

   "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if

4

doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996). Because Plaintiff proceeds *pro se*, her pleading is liberally construed and her Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

## C.    Rule 56

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

6

Plaintiff did not file an opposition to the City's motion for summary judgment. However, the Court will not grant the entry of summary judgment without considering the merits of the unopposed motion. *See Stackhouse v. Mazurkiewicz,* 951 F.2d 29, 30 (3d Cir. 1991) (district court should not have granted summary judgment solely on basis that motion for summary judgment was not opposed).

## IV. DISCUSSION

Plaintiff's Complaint lists several statutes as bases for federal jurisdiction, but the allegations do not indicate against whom or under which statute the claims are made. The statutes include: (1) Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; (2) Section 8(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b); (3) interference and retaliation under the Family Medical Leave Act ("FMLA"); (4) Title 19 from Delaware's Unemployment Insurance Appeal Board ("UIAB") Regulations, subparagraphs 6.1 through 6.4; and (5) 29 U.S.C. § 626 (c)(1). Conspiracy is also listed as a basis for jurisdiction.

The City moves for dismissal and, in the alternative for summary judgment, on the grounds that: (1) this Court lacks subject matter jurisdiction; (2) the Complaint fails to state legal claims against it; (3) Plaintiff failed to exhaust her administrative remedies as to the retaliation claim; (4) Plaintiff cannot state a prima facie claim of retaliation; (5) it has immunity from the claims for intentional infliction of emotional distress and negligent infliction of emotional distress; (6) it did not violate Plaintiff's due process rights; and (7) Plaintiff was terminated for just cause. (D.I. 16) The Union moves for dismissal on the grounds that: (1) Plaintiff failed to exhaust her administrative remedies and, therefore, the Court lacks subject matter jurisdiction to consider the Section 301 claim; and (2) the claim under the National Labor Relations Act is preempted under the *Garmon* preemption doctrine. (D.I. 26)

7

A.      **Hybrid Section 301 LMRA Claim; Duty of Contract, Duty of Fair Representation**

The City and the Union move to dismiss this claim. The City moves to dismiss on the grounds that there are no alleged facts to support a claim against it. The Union moves for dismissal on the grounds that Plaintiff failed to exhaust her administrative remedies and prematurely filed this action raising this issue.

The Section 301 LMRA claim appears to be a "hybrid" Section 301 action. Section 301 of the LMRA authorizes "[suits] for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations." 29 U.S.C. § 185(a). A "hybrid" section 301 action "is one in which a union member sues his or her employer for breaching its contractual obligations under the collective bargaining agreement and the union for breaching its duty of fair representation." *Beidleman v. Stroh Brewery Co.*, 182 F. 3d 225, 236 (3d Cir. 1999).

> To prevail against either the company or the Union, . . . employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach-of-contract suit under § 301 . . . but a hybrid § 301/fair representation claim, amounting to a direct challenge to 'the private settlement of disputes under the collective-bargaining agreement.' Also . . . it has no close analogy in ordinary state law.

*DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 164-65 (citations omitted).

A union, as the exclusive bargaining representative of employees in a bargaining unit, has a statutory duty to fairly represent those employees. *See Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953). To properly plead a claim against the union for breach of the duty of fair representation, the plaintiff must sufficiently aver that the union's conduct toward that member was "'arbitrary, discriminatory, or in bad faith.'" *Masy v. N.J. Transit Rail Operations, Inc.*, 790 F.2d 322, 328 (3d Cir.

1986) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). A union is granted a "wide range of reasonableness" so long as it acts with "complete good faith and honesty of purpose." *Huffman*, 345 U.S. at 338. A union's actions are only deemed arbitrary if the union's behavior is so far outside the "wide range of reasonableness" as to be irrational. *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Huffman*, 345 U.S. at 338).

The claims against the Union will be dismissed. Plaintiff claims the Union breached its "duty of fair representation to cover" the City's wrongful grievance process, impeded the grievance process, and did not progress the grievance to Step 4 of the grievance process. (D.I. 2 at 5) The allegations are insufficient to withstand a motion to dismiss given that Plaintiff failed to provide plausible allegations of fact that the Union's conduct was arbitrary, discriminatory, and in bad faith. Also, Plaintiff commenced this action prematurely. When Plaintiff filed her Complaint on February 10, 2017, the Step IV grievance hearing had yet to take place. It was held on May 3, 2017. Plaintiff attended and participated in the hearing and received a copy of the grievance decision, all of which conflicts with her premature allegations that the Union did not progress the matter to Step IV of the grievance process or provide her with a grievance decision.[2]

Plaintiff's hybrid claim against the City also fails. First, "[a] breach of the duty of fair representation is a necessary condition precedent to the § 301 claim." *Albright v. Virtue*, 273 F.3d 564, 576 (3d Cir. 2001) (internal quotation marks omitted). Here, Plaintiff's claim against the Union for breach of the duty of fair representation will be dismissed and, thus, the claim against the City must, accordingly, also be dismissed. Second, a Section 301 claim associated with a duty of fair representation claim requires a showing that "the employer somehow acted improperly and

---

[2] The Court does not address the Union's position that the Court lacks jurisdiction to hear the claim due to Plaintiff's failure to exhaust administrative remedies given that the Court does not have before it a copy of the Collective Bargaining Agreement and cannot determine if the Union's position has merit. Regardless, dismissal is appropriate on other grounds.

infringed the rights of the individual aggrieved employees." *American Postal Workers Union, AFL–CIO, Headquarters Local 6885 v. American Postal Workers Union, AFL-CIO*, 665 F.2d 1096, 1109 (D.C. Cir. 1981). With respect to the City, the Complaint includes only the conclusory assertion that the City "breached [its] duty of contract." (D.I. 2 at 5) This bare allegation falls far short of stating a 301 claim against the City. Thus, even if the Complaint successfully alleged a breach of the duty of fair representation by the Union, there is no plausible factual support for the companion claim against the City. Therefore, the claim must be dismissed.

### B.   Preemption/National Labor Relations Act

Section 8(b) of the NLRA deals with unfair labor practices by labor organizations. *See* 29 U.S.C. § 158(b). The City moves for dismissal on the grounds that Plaintiff fails to allege facts to support a claim against it for unfair labor practices, and the claim is more appropriate against a labor union and not an employer. The Union moves for dismissal on the grounds that the claim is within the exclusive jurisdiction of the National Labor Relations Board and is preempted. It also seeks dismissal because the acts complained of by Plaintiff, as an employee of the City of Wilmington, is subject to review by the Delaware Public Employment Relations Board ("PERB"), not the National Labor Relations Board.

The Complaint fails to allege any specific conduct directed to any Defendant. In addition, Plaintiff, is an employee of the City of Wilmington, a public employer, and, hence, the Union's conduct was subject to review by the PERB. *See* 19 Del. C. § 1308 (Board is empowered and directed to prevent any unfair labor practice described in § 1307(a) and (b) and to issue appropriate remedial orders). The intent of Public Employment Relations Act, 19 Del. C. §§ 1301-1319, was to "extend[ ] to all public sector employers and employees the right to collectively bargain" and "bring all public sector employers and employees under the jurisdiction of the Public Employment Relations Board." *Delaware State Univ. v. Delaware State Univ. Chapter of Am. Ass'n of Univ. Professors,*

2000 WL 33521111, at *6 (Del. Ch. May 16, 2000).  Determinations of unfair labor practices are left to the PERB and, on appeal, the Court of Chancery.  *See Morozowich v. Windsor*, 2001 WL 660109, at *3 (Del. Super. Mar. 30, 2001); *see also American Fed'n of State, Cnty. and Mun. Emps, Council 81, Local 2004 v. State*, 696 A.2d 387 (Del. 1997) (complaint alleging state agency failed to enforce hearing officer's decision regarding job reclassifications was "unfair labor practice complaint" assertable under collective bargaining agreement, which provided that violations be processed through grievance process; therefore, complaint was within jurisdiction of PERB).

To the extent Plaintiff seeks to raise an unfair labor practices claim, her remedy lies with the PERB.  Accordingly, the NLRA claims will be dismissed for want of jurisdiction.[3]

**C.      Family Medical Leave Act - Retaliation**

Plaintiff alleges she was retaliated against for taking leave under the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*  "Courts have recognized that the FMLA creates two essentially distinct causes of action." *Peter v. Lincoln Tech. Inst., Inc.*, 255 F. Supp. 2d 417, 438 (E.D. Pa. 2002) (citations omitted).  An interference claim prohibits an employer from acting to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" secured by the Act. *Thomas v. St. Mary Med. Ctr.*, 22 F. Supp. 3d 459, 472 (E.D. Pa. 2004) (citing 29 U.S.C. § 2615(a)(1); *see also Hayduk v. City of Johnstown*, 386 F. App'x 55, 59 (3d Cir. July 2, 2010).  A "retaliation" or "discrimination" claim makes it unlawful for an employer to discharge or in any other manner discriminate against the employee for exercising, or attempting to exercise, her FMLA rights. *Id.* (citations omitted).

---

[3] The Court was not provided the Collective Bargaining Agreement for review and, therefore, does not address the claim that dismissal is appropriate because the claim is preempted. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).

To state a claim for FMLA retaliation, an employee must allege that (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the request for leave. *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 594 (E.D. Pa. 2017); *see also Conoshenti v. Public Service Elec. & Gas Co.*, 364 F. 3d 135 (3d Cir. 2004) (for prima facie FMLA retaliation claim, plaintiff must show she requested or took FMLA, thereafter suffered adverse employment decision, and decision was casually related to leave activity). A plaintiff may establish a causal link between the protected right and the adverse employment decision by temporal proximity or evidence of antagonistic conduct. *See Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007). "As with other retaliation claims, the Court utilizes the burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)."

The City does not dispute that Plaintiff took FMLA leave, or that her termination was an adverse employment decision. Therefore, the Court considers whether there is a causal connection between the two. "Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)). More than two months passed between Plaintiff's return from FMLA leave in May 2016 and her suspension from employment on July 25, 2016. Courts have routinely found this amount of time, or even less, as not unduly suggestive of a retaliatory motive. *See, e.g., Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (temporal proximity of just over two months was not enough to establish causation); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (temporal proximity of approximately three weeks could not raise issue of material fact as to causation in retaliation claim). Thus, the Court finds that the temporal

12

proximity between Plaintiff's exercise of FMLA rights and the suspension and ultimate termination of her employment is not unduly suggestive.

Looking at the remainder of the proffered evidence as a whole, the Court finds no basis upon which to infer a retaliatory motive on the part of the City in deciding to terminate Plaintiff's employment. Plaintiff was disciplined on several occasions before taking approved leave under the FMLA. She returned to work in early May 2016 and in later July 2016 was once against disciplined. It was not until nearly two months after Plaintiff's exercise of FMLA rights, and immediately following complaints that she was rude and disrespectful to a customer, that she was suspended pending a pre-termination hearing and her employment terminated.

The Court finds that Plaintiff has not provided sufficient facts to establish a prima facie FMLA claim. In addition, the undisputed record supports a finding that the City had non-retaliatory reasons for suspending and terminating Plaintiff's employment. There is no genuine dispute of material fact as to the FMLA retaliation claim. Therefore, the Court will grant the City's motion for summary judgment as to this claim.[4]

### D.      Discharge; Due Process; Termination for Just Cause

Plaintiff, who was employed by the City, alleges she was wrongfully discharged without due process and just cause. "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. A state cannot be held to have violated due process

---

[4] The Court will not address that portion of the City's motion to dismiss on the ground that Plaintiff failed to exhaust her administrative remedies as to that claim, in light of the finding that the Complaint fails to state an FMLA retaliation claim and the evidence of record supports a finding that Plaintiff's employment ended based upon non-retaliatory reasons. The Court notes that Plaintiff exhausted her administrative remedies during the pendency of this case.

requirements when it has made procedural protections available and the plaintiff has simply refused to avail himself of them." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d. Cir. 2000) (citations omitted).

The Court assumes that Plaintiff alleges a procedural due process claim under 42 U.S.C. § 1983. To state such a claim, she must allege that (1) she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to her did not provide "due process of law." *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

To have a protectable property interest in a job, a person must have a "legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "This Court has consistently held that public employees have a property interest if the employer has set out guidelines as to grounds for discharge." *Dixon v. Mayor & Council of City of Wilmington*, 514 F. Supp. 250, 253 (D. Del. 1981) (citations omitted). While the Complaint does not allege that Plaintiff has a protected property interest in her continued employment at the City, the Court assumes for purposes of this motion that Plaintiff had a property interest in her job.

Plaintiff was suspended on July 25, 2016, pending a pre-termination hearing. Generally, a pre-termination hearing "need not be elaborate." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985). "Where adequate post-termination procedures are available, an employee is entitled only to notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Schmidt v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011) (internal quotation marks and citation omitted). The pre-termination hearing "need not definitively resolve the propriety" of the termination. *Loudermill*, 470 U.S. at 545. "It should be an initial check against mistaken decisions -- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545-46.

14

The unrefuted facts are as follows: Plaintiff was provided notice of the pre-termination hearing, and it was rescheduled upon her request. Plaintiff attended, and participated in, the pre-termination hearing. She was provided an opportunity to present her story and she provided testimony at the hearing. Also, she was provided a written decision of the findings of the pre-termination hearing, that included notice of her termination of employment retroactive to July 25, 2016.

In addition, the record reflects that Plaintiff used the grievance process and was represented by the Union during the grievance process. Her grievance proceeded to Step IV of the grievance process. Plaintiff was given notice of, attended, and participated in the Step IV hearing. Evidence was presented and testimony given during the hearing. Following the hearing, Plaintiff was provided with a written decision of the Step IV Grievance hearing.

The record does not support Plaintiff's claim that she was wrongfully discharged without due process. To the contrary, the record reflects that she received adequate notice and was given an opportunity to give testimony and present evidence. Therefore, the Court will grant the City's motion as to the due process/wrongful discharge claim.

### E.     Immunity

The Complaint seeks damages for intentional and negligent infliction of emotional distress. The City moves for dismissal pursuant to the Delaware Tort Claims Act. In addition, the City seeks dismissal as the Complaint does not plead facts related to these two claims, which if accepted as true, would state a plausible claim for relief.

The Delaware Tort Claims Act provides that "all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages." 10 Del. C.

15

§ 4011(a). "It is well established allegations of emotional distress do not amount to bodily injury for purposes of [§ 4011(c) ]." *Dickerson v. Phillips*, 2012 WL 2236709, at *2 (Del. Super. Ct. June. 13, 2012). The City is immune from suit on these claims and, therefore, its motion will be granted.

### F.   Unemployment Benefits

The Complaint refers to Title 19 of the Delaware Administrative Code related to the Division of Unemployment Insurance and to subparagraphs 6.1 through 6.4 from Section 1201 of the Administrative Code. The City moves for dismissal or any unemployment insurance claim directed against it.

The statutes relate to Plaintiff's claim for reinstatement of unemployment insurance benefits. This claim was raised against the Board and does not appear to be directed towards the City. Regardless, it is not within this Court's purview to review State unemployment benefits decisions. *See Lorah v. Delaware*, 2010 WL 2132059, at *3 (D. Del. May 25, 2010). The Court will grant the City's motion to dismiss this claim.

### G.   Age Discrimination

The Complaint refers to 29 U.S.C. § 626(c)(1) in its "Basis for Jurisdiction" and "Venue" sections. This statute refers to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.* The City moves to dismiss the claim.

The ADEA makes it unlawful for an employer to terminate an individual because of her age. *See* 29 U.S.C. § 623(a)(1). The Complaint does not allege any fact relating to age discrimination. Therefore, the Court will grant the motion to dismiss the ADEA claim.

### H.   Conspiracy

Conspiracy is the last theory listed under the "Basis for Jurisdiction" section of the Complaint. The City construes this as a state conspiracy claim and seeks its dismissal. It is not clear if the conspiracy claim is one raised under 42 U.S.C. § 1983 or as a state conspiracy claim.

16

Regardless, under either theory, stating one word "conspiracy" falls far short from alleging a conspiracy claim. The Complaint does not allege any facts that state a claim to relief that is plausible on its face. The Court will grant the motion to dismiss the conspiracy claim.

## V.    CONCLUSION

For the above reasons, the Court will: (1) grant the City's motion to dismiss, or in the alternative, motion for summary judgment (D.I. 15); and (2) grant the Union's motion to dismiss (D.I. 25). An appropriate Order will be entered.